## A02A2471. SOOD v. SMEIGH.
### (578 SE2d 158)

ELDRIDGE, Judge.

Pran Sood, M.D., brings this discretionary appeal from the denial of his motion to dismiss this medical malpractice case against him for failure to timely attach a valid affidavit of an expert witness stating that he had been professionally negligent in some fashion and that any attempt to cure any defects in plaintiff Sonya Smeigh's expert's affidavit failed. Finding that the trial judge was right for the wrong reasons, because in this case OCGA § 9-11-9.1 does not apply, we affirm.

On January 10, 2002, the plaintiff filed her medical malpractice action against the defendant, which alleged that the affidavit of Dr. David A. Krant was attached. Attached to the complaint, captioned "Expert Affidavit" and executed by David A. Krant, M.D., was an unsworn and unnotarized affidavit, which stated:

Re: Sonya Smeigh

I am a board certified orthopedic surgeon practicing in Florida. I graduated from Harvard Medical School in 1966 and have practiced orthopedic surgery since 1973. I took a hand surgery fellowship at Jackson Memorial Hospital in 1975. I have been Chief of Orthopedics, Chief of Surgery, and Chief of Staff at various hospitals in my area.

I have reviewed extensive medical records on Sonya Smeigh, including those from Piedmont Hospital, the Peach-tree Orthopedic Clinic, the Hughston Clinic, and Southern Regional Medical Center. Included in these records are notes by Dr. Pran Sood and Dr. Stephen W. Smith. She had a left total knee replacement by Dr. Sood on October 19th, 1999. She continued to have left knee pain, which despite large doses of pain medication, persisted and worsened. Ultimately on November 16th, 2000, she underwent a revision arthroplasty of the knee. At that surgery it was discovered by Dr. Smith that the patella component inserted on October 19th, 1999 was "backwards, and that the medial portion was lateral, and the lateral portion was medial on the patella."

In my opinion Dr. Sood deviated from the standard of care. Appropriate attention was not paid to the alignment or orientation of the components during the original total knee replacement. The factual basis for this claim is the clear description in Dr. Smith's operative note dated Nov. 16th, 2000, and the fact that the patient improved following the revision surgery.

The disassociation of the plastic from the metal backed patella noted on the revision surgery does not necessarily represent a deviation from the standard of care.

Records may be reviewed at a later date that could provide further information in the case. For now, however, within a reasonable degree of medical certainty, there has been a deviation from the standard of care that resulted in an injury.

The signature of David A. Krant, M.D., followed his typed name and November 30, 2001.

On February 11, 2002, the defendant answered, filed a motion to dismiss for failure to attach an affidavit, and filed a motion for summary judgment attacking the sufficiency of the affidavit of Dr. Krant. On February 26, 2002, plaintiff filed an identical amended complaint with the identical affidavit of Dr. Krant, but the signature of Marlene B. Achom was affixed with the Florida notary seal. Defendant filed a supplemental brief in support of the motion to dismiss attacking the effort to cure the affidavit. On March 22, 2002, Achom by an affidavit executed before Daphney D. Whyms on March 19, 2002, in Broward County, Florida, swore as follows: "[t]he affidavit of David A. Krant, M.D. was acknowledged before me, Marlene B. Achom, on February 20, 2002. Said affidavit was notarized in Broward County, State of Florida." Achom never, either on Dr. Krant's affidavit or in her own affidavit, swore that before her Dr. Krant had ever been sworn by her as to the truth of the facts stated in his affidavit; her affidavit simply stated that Dr. Krant acknowledged to her that it was his signature on the affidavit.

In his numerous enumerations of error, the defendant attacks the fact that no valid affidavit was filed contemporaneously with the filing of the medical malpractice action; that there was no valid affidavit in existence at the time of filing because the affidavit signed by the expert had not been sworn to before a notary; and that since the affidavit had not been sworn to by the expert, then there was nothing to amend as a "defective affidavit," i.e., an affidavit sworn in the presence of a notary public by the expert but otherwise substantially satisfying the requirements of OCGA § 9-11-9.1. To be an amendable affidavit when filed with the complaint under OCGA § 9-11-9.1 (e), the affidavit must have been sworn to before a notary public, even if it is otherwise defective; otherwise, it does not constitute a valid affidavit. See *Sambor v. Kelley*, 271 Ga. 133, 134 (3) (518 SE2d 120) (1999) (an affidavit not sworn to before a notary public is invalid); *Schmidt v. Feldman*, 230 Ga. App. 500 (497 SE2d 23) (1998) (an affidavit cannot be sworn to by long distance telephone but must be sworn to in the physical presence of the notary public). In such contentions, defendant is correct that the trial court erred in denying his motion to dismiss on such grounds. However, the trial court was correct in denying the motion to dismiss, because OCGA § 9-11-9.1 did not apply under these facts and circumstances.

1. This case is not a case which comes within OCGA § 9-11-9.1. OCGA § 9-11-9.1 was intended to eliminate frivolous actions; however, in this case, there exists clear evidence of simple negligence, and plaintiff has demonstrated her ability to prove such simple negligence. "The legislative purpose behind the section 9-11-9.1 affidavit requirement is to reduce the number of frivolous malpractice claims that are filed. That purpose is fulfilled when, before filing a com-

plaint, a plaintiff investigates his or her claim sufficiently to secure an expert's affidavit." *Thompson v. Ezor*, 272 Ga. 849, 852 (2) (536 SE2d 749) (2000); see generally *0-1 Doctors Mem. Holding Co. v. Moore*, 190 Ga. App. 286, 288 (1) (378 SE2d 708) (1989). Here, there is a qualified medical expert ready to testify under oath that the defendant was negligent in reassembling the prosthetic patella backward in the total knee replacement, causing injury to the plaintiff. However, this affidavit was not sworn to and executed in the presence of a notary public prior to filing the complaint, which rendered the affidavit fatally defective ab initio for absence of a notary public swearing the witness in person. *Sambor v. Kelley*, supra at 134. Absent a statutory exception to filing an affidavit with the complaint, only a sworn defective affidavit may be corrected by amendment under OCGA § 9-11-9.1 (e) within 30 days, because OCGA § 9-11-9.1 (d) mandates dismissal absent a cure of the defect. *Jordan, Jones & Goulding, Inc. v. Balfour Beatty Constr.*, 246 Ga. App. 93, 94-95 (1) (539 SE2d 828) (2000) (failure to file an affidavit with the complaint when not statutorily excused requires a dismissal with prejudice). An unsworn affidavit, although executed, is not a valid affidavit subject to amendment under OCGA § 9-11-9.1 (d). See *Sambor v. Kelley*, supra; *Schmidt v. Feldman*, supra. Had the notary sworn the witness and had the witness acknowledge his signature and state that his testimony as stated in the affidavit was true, then there would have been a valid but defective affidavit that could be amended timely to furnish the proper jurat or the notary public's affidavit could have proven what was absent from the face of the affidavit. Id. In this case, none of these things were done; the affidavit was void ab initio both as attached to the original complaint and as attached to the amended complaint and affidavit when the notary's affidavit was considered.

The original complaint and the attached unsworn affidavit signed by the expert contended that in the total knee replacement the defendant installed the prosthetic patella backward, causing injury to the plaintiff. "No expert testimony was necessary to get these claims before a jury because the claims do not require proof of a professional standard of care[,]" and thus, no affidavit was required; such conduct constituted simple negligence committed by one who happened to also be a professional. *Bowling v. Foster*, 254 Ga. App. 374, 381 (1) (562 SE2d 776) (2002).

> Not every claim which calls into question the conduct of one who happens to be a professional is a professional malpractice claim requiring expert testimony or an OCGA § 9-11-9.1 affidavit. It is only where the claim is based upon the failure of the professional to meet the requisite standards of the

subject profession that the necessity to establish such standards and the violation thereof by expert testimony for the guidance of the jury arises.

(Citation and punctuation omitted.) *Boggs v. Bosley Med. Institute*, 228 Ga. App. 598, 600 (1) (492 SE2d 264) (1997) (action for fraud against the treating physician); accord *Bowling v. Foster*, supra at 381 (claim of fraud); cf. *Albany Urology Clinic v. Cleveland*, 272 Ga. 296, 301 (3) (528 SE2d 777) (2000). Such alleged conduct in reassembling the patella backward in this case constitutes simple negligence as to which a nonprofessional witness or expert is competent to testify to the occurrence even though brought against a professional, because no standard of care need be proven to find negligence. See *Upson County Hosp. v. Head*, 246 Ga. App. 386, 389 (2) (540 SE2d 626) (2000); see also *Creel v. Cotton States Mut. Ins. Co.*, 260 Ga. 499, 500 (397 SE2d 294) (1990); *Hodge v. Jennings Mill*, 215 Ga. App. 507, 508-509 (451 SE2d 66) (1994). "[A] claim based on simple negligence, which per se would not require a supporting affidavit, [was] averred in the complaint against [defendant]." *Legum v. Crouch*, 208 Ga. App. 185, 186 (1) (430 SE2d 360) (1993). "Whether an action alleges professional malpractice or simple negligence depends on whether the professional's alleged negligence required the exercise of professional judgment and skill." *Mendoza v. Pennington*, 239 Ga. App. 300 (1) (519 SE2d 715) (1999). Where professional skill and judgment are not involved in a mechanical act of reassembly of a prosthetic patella, an affidavit under OCGA § 9-11-9.1 is not required. *Lamb v. Candler Gen. Hosp.*, 262 Ga. 70, 71-72 (1) (413 SE2d 720) (1992) (simple negligence of hospital when instruments were not used according to manufacturer's instructions); *Upson County Hosp. v. Head*, supra at 389; *Mendoza v. Pennington*, supra at 300 (1); *Legum v. Crouch*, supra at 186. To establish simple negligence does not require an affidavit, because it does not call into question the conduct of a professional in his area of expertise, judgment, and skill. *Labovitz v. Hopkinson*, 271 Ga. 330, 334-337 (3) (519 SE2d 672) (1999); *Lutz v. Foran*, 262 Ga. 819, 820 (2) (427 SE2d 248) (1993); *Jordan, Jones & Goulding, Inc. v. Wilson*, 197 Ga. App. 354, 355-356 (1) (398 SE2d 385) (1990); *Barr v. Johnson*, 189 Ga. App. 136, 137-138 (375 SE2d 51) (1988) (the clear and palpable malpractice is not an exception to OCGA § 9-11-9.1). "A professional negligence or professional malpractice claim calls into question the conduct of the professional in his area of expertise." *Upson County Hosp. v. Head*, supra at 389; see also *Lutz v. Foran*, supra at 820. "The determinative factor is 'whether the professional's alleged negligence required the exercise of professional knowledge and skill.'" *Frieson v. South Fulton Med. Center*, 255 Ga. App. 217, 218 (3) (564 SE2d 821) (2002), citing *Peterson v. Columbus Med.*

*Center Foundation*, 243 Ga. App. 749, 754 (2) (533 SE2d 749) (2000). In this case, the design for the reassembly of the patella permitted no exercise of professional discretion, judgment, or skill, only compliance with the instructions of the manufacturer. See *Lamb v. Candler Gen. Hosp.*, supra at 71-72. "It is a question of law for the court to decide" whether the conduct was simple negligence or professional negligence involving professional judgment and skill in his area of expertise. *Upson County Hosp. v. Head*, supra at 389; accord *Dent v. Mem. Hosp. of Adel*, 270 Ga. 316, 318 (509 SE2d 908) (1998).

2. Further, for purposes of OCGA § 9-11-9.1, the installation of the prosthetic patella in a backward position contrary to the instruction and design of the device would constitute an unconsented-to battery on the plaintiff by the defendant, because such action was contrary to any informed consent granted to do a total knee replacement; because the risk of reassembling the prosthetic patella backward is a risk of negligence, about which a patient is not advised regarding any informed consent. See generally *Ketchup v. Howard*, 247 Ga. App. 54 (543 SE2d 371) (2000); cf. OCGA § 31-9-6.1; *Albany Urology Clinic v. Cleveland*, supra at 298-299 (1). Thus, in alleging professional negligence in reassembling the prosthetic knee backward, plaintiff alleged an action for unconsented-to battery.

An action for battery arises from "any unauthorized and unprivileged contact by a doctor with his patient in examination, treatment or surgery." (Citation and punctuation omitted.) *Harris v. Leader*, 231 Ga. App. 709, 710 (1) (a) (499 SE2d 374) (1998). "A cause of action for battery exists when objected-to treatment is performed without the consent of, or after withdrawal of consent by, the patient[,]" although written consent was given to perform another procedure or surgery. (Citations omitted.) *Joiner v. Lee*, 197 Ga. App. 754, 756 (1) (399 SE2d 516) (1990); see also *Mims v. Boland*, 110 Ga. App. 477, 481-482 (1) (a) (138 SE2d 902) (1964); cf. *Albany Urology Clinic v. Cleveland*, supra at 301. A battery by a physician does not come under OCGA § 9-11-9.1 and does not require an affidavit. *Newton v. Porter*, 206 Ga. App. 19 (424 SE2d 323) (1992); *Joiner v. Lee*, supra at 756 (1).

If the plaintiff executed an informed consent, which is not in the record, then the plaintiff in executing an informed consent would not have consented to, nor was she advised, that a risk of a total knee replacement included the installation and reassembly of the prosthetic patella negligently in a backward position. Thus, the defendant would receive no consent, and therefore, such act causing such backward installation would constitute an unconsented-to battery upon her by the defendant, which does not require a valid sworn-to affidavit. See *Labovitz v. Hopkinson*, supra at 337; *Ketchup v. Howard*, supra. Whether or not plaintiff executed an informed consent

constitutes an affirmative defense raised on summary judgment or trial. See *Bowling v. Foster*, supra at 379.

*Judgment affirmed. Smith, C. J., and Ellington, J., concur in judgment only.*

DECIDED FEBRUARY 6, 2003.

*Weinberg, Wheeler, Hudgins, Gunn & Dial, Robert G. Tanner, Shawn D. Scott, Allen, Weathington & Reeves, Paul E. Weathington,* for appellant.

*Adam S. Jaffe,* for appellee.